**FILED**
**NOVEMBER 9, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOVA DESIGN BUILD, INC., and ANNEX BUILDERS LLC, )<br>)<br>)<br>Plaintiffs, )<br>v. )<br>)<br>GRACE HOTELS, LLC, MUKESH BHEDA )<br>LYONS DESIGN GROUP, INC., ADAM )<br>LYONS, ROBERT WALZ, CAPITAL )<br>CONSTRUCTION LLC, and JEFF SCHMITZ, )<br>)<br>Defendants. ) | Civil Action No.<br><br>**07 C 6369**<br><br>**JUDGE GRADY**<br>**MAGISTRATE JUDGE BROWN** |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Nova Design Build, Inc., ("Nova"), and Annex Builders LLC ("Annex"), by their attorneys, for their complaint against defendants Grace Hotels, LLC ("Grace"), Mukesh Bheda ("Bheda"), Lyons Design Group, Inc. ("Lyons Design"), Adam Lyons ("Lyons"), Robert Walz ("Walz"), Capital Construction LLC ("Capital"), and Jeff Schmitz ("Schmitz"), state as follows:

### PARTIES AND JURISDICTION

1. Plaintiff, Nova, is an Illinois corporation with its principal place of business in Illinois. Nova is engaged in the design and construction of commercial properties and provides a full range of architectural and engineering services incident thereto.

2. Plaintiff Annex is an Illinois limited liability company with its principal place of business in Illinois. Annex is an affiliate of Nova, and is engaged in the business of providing commercial construction services.

3. Defendant Grace is an Illinois limited liability company, with its principal place of business in Geneva, Illinois. On information and belief, Grace is a franchisee of InterContinental Hotels Group, pursuant to which Grace is in the process of developing a

Holiday Inn Express hotel in Waukegan, Illinois, which it plans to operate when construction is completed.

4. On information and belief, Defendant Bheda is an individual domiciled in Illinois and is a member and manager of Grace, and at all times supervised and controlled Grace and obtains direct financial benefit from its operations.

5. On information and belief, Defendant Lyons Design is an Illinois corporation with its principal place of business in Libertyville, Illinois. Lyons Design is engaged in the business of providing commercial architecture services in competition with Nova.

6. On information and belief, Defendant Lyons is an individual domiciled in Illinois and is a principal of Lyons Design, and at all times supervised and controlled Lyons Design and obtains direct financial benefit from its operations.

7. On information and belief, Defendant Walz is an individual domiciled in Michigan. On information and belief, Walz is a professional engineer licensed in the state of Michigan, who does business under the assumed name "Walz Engineering," and who provides structural engineering services in Illinois although he is not a licensed structural engineer in this state.

8. On information and belief, Defendant Capital is a Michigan limited liability company, with its principal place of business in Michigan, and is engaged in the business of providing commercial construction services.

9. On information and belief, Defendant Schmitz is an individual domiciled in Michigan. On information and belief, Schmitz is a principal of Capital, and at all times supervised and controlled Capital and obtains direct financial benefit from its operations.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b).

11.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, predicated upon the Copyright Act, 15 U.S.C. § 102. The Court has pendant jurisdiction pursuant to 28 U.S.C. § 1367 as to the remaining claims.

## COMMON ALLEGATIONS

12.   At all relevant times, Nova, through its principal, Himanshu Modi, was a licensed architect, offering a full range of architectural design services, and construction supervision and consulting services.

13.   Annex Builders LLC ("Annex") is an affiliate of Nova, offering construction services to Nova's clients, among others. Through coordination of the complementary design and construction services that they respectively provide, Nova and Annex realize various efficiencies that enable them to effectively offer a turn-key design and construction package at reduced costs and at an accelerated schedule. These efficiencies give Nova and Annex a competitive advantage in bidding on most design-build projects.

14.   To that end, in addition to offering its professional services on a flat fee or hourly basis for limited scope projects, Nova offers full and ongoing "Architectural Services" (as that term is defined in the American Institute of Architect form B141) ancillary to construction projects for a fee equal to seven percent (7%) of the cost of construction.

### Nova's Written Agreement with Grace

15.   In or about March 2006, Grace contacted Nova to solicit a proposal for the design and construction of 95 unit Holiday Inn Express hotel on a 2.1 acre parcel in Waukegan, Illinois.

16.   Grace, which purported to be a franchisee of InterContinental Hotels Group, provided Nova with a generic prototype design that set forth a generic footprint and basic specifications: a three story structure (without basement), indoor swimming pool, administrative areas, meeting facilities, breakfast area and laundry room.

17. On or about March 18, 2006, in response to Grace's solicitation, Nova submitted a proposal for the two phases of the project. The first phase detailed the preparation of "scope" architectural, structural, electrical, HVAC and plumbing drawings that would be necessary to obtain a permit, in exchange for incremental payments totaling $50,000, plus reimbursement of certain expenses; and the second phase contemplated that Grace would enter into an AIA form construction contract with Annex upon mutually agreeable terms within thirty days thereafter.

18. "Scope" drawings are generally used solely in the permitting process, and are less detailed and less expensive to procure than the more complete "design development" drawings that are typically used to solicit construction bids. Because of the affiliation, however, between Nova (the designer) and Annex (the prospective builder), Annex would be able to use the less expensive scope drawings to prepare a construction bid.

19. The parties met shortly thereafter to discuss the design-build proposal. During this meeting, Grace verbally promised that Annex would be awarded the construction contract, but requested that phase one of the proposal be revised so as to provide full "design development" drawings that Grace could use to solicit competing construction bids. Nova advised Grace that in order to prepare the more detailed drawings, Nova's fee would increase substantially.

20. After extensive discussion, the parties agreed that Nova would prepare the more detailed drawings for the original $50,000 fee, that Annex would be afforded an opportunity to match lower competing bids, and that if Annex was not awarded the construction contract, Nova would receive an additional $15,000 fee.

21. The proposal was revised accordingly, and the proposal was countersigned, manifesting assent to the terms therein, and constituting express agreement between the Parties (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

4

22. Annex was a third party beneficiary of the Agreement.

### The Relevant Terms of the Agreement

23. Per its own terms, the Agreement contemplated that Nova would complete a preliminary design within ten days, and upon approval, begin the design development phase. The Agreement contemplated that the permit drawings would be completed within ninety days from the Agreement's execution. *See* Agreement at ¶ 5.

24. In addition, the Agreement expressly described the scope of the work that was included for the $50,000 fee (see section 2), as well as the prospective work that was *not included* as part of the fee. *See* Agreement at ¶¶ 2, 3.

25. Among the prospective work that the parties agreed would not be included as part of the $50,000 fee, was "any revisions not initiated by Nova Design Build, Inc., after approval to start design development drawings." *See* Agreement at ¶ 3G. Such additional work, among other things, would be billed to Grace at a rate of $70/hour.

26. Finally, and significantly, the Agreement contemplated that Grace could use Nova's drawings for bidding, permitting and construction purposes, but the parties expressly agreed that the design and drawings would remain Nova's property and could not be duplicated in any form or fashion without Nova's written approval. *See* Agreement at ¶¶ 9, 12.

### The Effort and Resources Expended by Nova to Complete the Project and the Extensive Additional Work Requested by Grace

27. Nova committed its full resources to the project immediately in order to meet the aggressive schedule requested by Grace. From the outset, however, Grace made numerous requests of Nova to perform additional work beyond the scope of work included as part of the $50,000 fee. This included numerous meetings with civil engineers, city officials, other

consultants and principals of Grace, who increasingly requested deviations from the prototype design.

28. Moreover, Grace requested multiple revisions throughout the design development phase of the work, including further deviation from the prototype design, which required extensive revisions to Nova's drawings through the development phase. Nova precisely tracked its time spent performing such additional work.

29. Despite the extensive additional work demanded of it, Nova completed the necessary drawings in a timely fashion. In all, Nova delivered more than ninety-five drawings, detailing the architectural, structural, mechanical, plumbing, electrical and fire protection design and features of the building.

30. Nova's designs and drawings deviated materially from the basic specifications set forth in the prototype to comply with the relevant building codes and for Grace's unique requests.

31. Adjacent to the title and identifying number of each and every drawing, the following prominently appears in large and all capitalized letters:

© 2006 NOVA DESIGN BUILD, INC. ALL RIGHTS RESERVED.
NO PART OF THIS DRAWING MAY BE PRODUCED IN ANY WAY WITHOUT THE PRIOR WRITTEN PERMISSION OF NOVA DESIGN BUILD, INC.

32. The drawings were issued on or about June 19, 2006 for submission to the City of Waukegan in connection with its permitting process.

**Grace's Scheme to Circumvent Nova's Continued Involvement In the Project**

33. It is customary in the industry for architects and engineers to be actively and directly involved in the permit review process. Accordingly, Nova identified itself as the contact to which the City should direct its comments on the drawings submitted.

34. Almost immediately, however, Grace acted to circumvent Nova's involvement in the process, directing the City to remove Nova as the contact for purpose of receiving permit review comments. Grace never advised Nova that it had been removed as the contact. On information and belief, this was part of a scheme designed to misappropriate Nova's work product and enrich Grace at the expense of Nova.

35. Nova learned on its own that it had been removed as the contact when it called the City after several weeks seeking comments on the drawings that Nova had prepared and submitted. Only after Nova demanded of Grace that it forward such comments to Nova did Grace begin to comply, albeit on a piece-meal basis.

36. Despite the incomplete and inefficient information it received from Grace, Nova promptly revised the drawings to conform to the City's comments, and submitted the revised drawings to the City on or about August 22, 2006. Grace was not charged for these revisions.

37. Grace, however, requested Nova's assistance with efforts to persuade its franchisor to approve the many deviations and variances that Grace had requested from the prototype. This was additional work, for which Nova was entitled to an additional hourly fee.

38. On or about September 5, 2006, Annex submitted a bid to build the hotel that Nova had designed. Approximately a week later Grace advised Nova that it would seek competitive bids. Copies of Nova's copyrighted were furnished to ten other builders for the purpose of soliciting construction bids. Despite the assurance that it had received from Grace, Annex was never afforded and opportunity to meet lower bids.

39. Per the terms of the Agreement, the failure of the parties' to reach a mutually agreeable construction contract within thirty days of the completion of permit drawings released Nova of any further architectural or engineering responsibilities except for the revision of drawings as required by the City. *See* Agreement, Part II.

40. Accordingly, Nova submitted invoices to Grace for the additional work performed on its behalf, billed at the rate of $70/hr, and for reimbursable expenses. Grace, however, failed to pay the invoices.

41. At the same time, Grace became increasingly unresponsive to calls from Nova and Annex inquiring about the status of payment and/or the project. Accordingly, Nova advised Grace that it would suspend further service unless and until the outstanding invoices (which at the time, totaled $13,643.50), and the additional $15,000 fee was paid.

42. Grace threatened to withhold all future payments, and to replace Nova unless it agreed to forego a substantial portion of the amounts that it was owed. Nova was ultimately forced to accept $18,000 of the more than $28,000 to which it was entitled.

### The Unlawful Duplication and Use of Nova's Design and Drawings

43. On or about October 16, 2006, Nova submitted its prompt response to the City's final comments on its drawings. That day, the City issued a construction permit based upon Nova's design and drawings, and listed Nova as the architect of record on the project.

44. At or around that Grace received the requisite approval from the City, Capital submitted a bid for the construction of the hotel. On information and belief, Annex's bid was competitively comparable to the bid that was submitted by Capital for the Phase II of the project.

45. On information and belief, Grace requested that Capital identify modifications that could be made to the existing plans that might yield savings in the costs of construction, and in response, Capital made numerous cost-saving recommendations.

46. All of the recommendations, however, would have required that Nova modify its drawings, for which Nova would be entitled to a fee. Moreover, Nova would not have been constrained by the $70 hourly fee to which it had agreed for the Phase I work on the project.

Indeed, the $70 hourly fee was well below the market rate and had only been offered as an accommodation for design-build clients.

47. Accordingly, the costs to Grace of procuring the new drawings would offset the savings of constructing a hotel using the modified designs.

48. On information and belief, in an effort to enrich themselves at the expense of Nova and Annex, Schmitz and Bheda arranged to have Capital provide the requisite drawings at a dramatically reduced cost, and for Capital to be awarded the construction contract.

49. The only practical way to do so, however, was to effectively misappropriate Nova's designs and drawings, without regard to terms of the Agreement and the clear Notice of Copyright and accompanying restrictive language on the drawings.

50. In furtherance of their scheme, Grace and/or Capital removed Nova from the City's file as the architect of record, and solicited Lyons Design to modify Nova's architectural plans and drawings and submit them as its own. On information and belief, Lyons Design was given a set of Nova's copyrighted drawings, and unlawfully used the drawings to prepare a modified set that were signed by Lyons on or about July 19, 2007, and submitted to the City.

51. Lyons Design's drawings are the same or substantially similar in overall form, arrangement, layout, description and composition of spaces and elements of unique or creative design, as Nova's copyrighted drawing.

52. Nova was neither advised of nor consented to the use or copying of its designs of drawings by Lyons Design.

53. Grace solicited Walz to modify Nova's structural plans and drawings and submit them as his own. On information and belief, Walz was given a set of Nova's copyrighted drawings, and unlawfully used the drawings to prepare a modified set that he signed on or about July 16, 2007, and submitted to the City.

54. Significantly, Walz signed simply as a Professional Engineer. Projects of the magnitude generally require the signature of a licensed Structural Engineer. Walz is not a Structural Engineer licensed in the state of Illinois.

55. Walz's drawings are the same or substantially similar in overall form, arrangement, layout, description and composition of spaces and elements of unique or creative structural design, as Nova's copyrighted drawing.

56. Nova was neither advised of nor consented to the use or copying of its designs of drawings by Lyons.

57. On information and belief, Grace and Capital were fully aware of and, in fact, actively facilitated the unlawful use and copying of Nova's design and drawings by Lyons and Walz.

58. The referenced scheme effectively allowed Capital to underbid Nova for design-build services, and for Grace to realize savings that would not have otherwise been available to it.

**Nova's Discovery of the Defendants' Duplication and Use of Nova's Design and Drawings**

59. On information and belief, through the wrongful conduct described above, Capital was able to underbid Annex and was awarded the construction contract by Grace.

60. In or about mid 2007, Capital began construction of the Grace hotel project based upon the infringing design and drawings submitted to the City by Walz and Lyons.

61. In or about September 2007, Nova's principal passed the site of the construction and noticed that work had begun. From the street, however, he noticed the construction of a four-story elevator shaft with steel columns on the first and second floor that varied from the design and drawing that Nova had submitted and that the City had approved.

62. Nova contacted the City to inquire as to whether its designs and drawings had been altered. During that inquiry, Nova learned for the first time that it had been replaced as the architect of record, thus triggered initial suspicion that its drawings and designs may had been unlawfully used and/or copied.

63. Pursuant to the Freedom of Information Act, Nova requested and received access to the drawings. Nova confirmed that the designs and drawings submitted by Lyons and Walz used and copied most of Nova's design.

64. Merely by way of example, the infringing drawings copied more than 90% of Nova's design, including among other things, Nova's wall layout, wall bump-outs, column placement, shaft locations, elevator placement, pool placement, room numbers and names, suite configuration, location of specific specialized rooms and amenities, and the number and configuration of bays.

65. Neither Walz nor Lyons submitted mechanical, electrical and plumbing design and drawings to the City, and thus, Grace and Capital are using Nova's mechanical, electrical and plumbing designs and drawings prepared by Nova for use in tandem with its architectural and structural drawings. Nova has not approved or consented to the use of its mechanical, electrical and plumbing designs and drawings in this piece-meal fashion by Grace and Capital.

66. In or about late September, Nova contacted the City to advise it of the unlawful use and copying of Nova's design and drawings, and to withdraw and disavow any responsibility for the ongoing use of Nova's mechanical, electrical and plumbing designs and drawings unless it is in conjunction with the complete set of drawings that it had submitted and that the City had approved.

67. The reference conduct has substantially injured Nova directly by wrongfully depriving it of additional fees for professional services that were and are necessary and incident to the design and construction project.

68. Nova was also indirectly injured by foregoing professional fees in reasonable anticipation of a construction contract award to its affiliate, Annex.

69. Finally, on information and belief, Capital, Lyons Design and Walz each substantially profited from their unlawful infringement by receiving fees for professional services.

## COUNT I

### (FOR COPYRIGHT INFRINGEMENT)

70. Nova incorporates the allegations contained in paragraphs 1 through 69 as though set forth herein.

71. Nova owns a valid and registered copyright on the design and drawings that it prepared.

72. As described herein, Defendants Walz, Lyons Design and/or Lyons Nova's copyrighted designs and drawings without permission or authority.

73. As described herein, Grace, Bheda, Capital and Schmitz were aware of and induced, directed or materially contributed to the referenced infringement.

74. The described activity constitutes unlawful copyright infringement, vicarious infringement and/or contributory infringement in violation of 17 USC § 501, *et seq*.

75. Each of the Defendants acted knowingly and willfully.

76. Nova has been injured, and seeks any and all damages available to it under §504 of the Copyright Act, 17 USC § 504.

WHEREFORE, Nova prays for judgment in its favor and against all Defendants, jointly and severally, in an amount to be proven at trial, together with an award of attorneys fees and any additional relief that this Court deems equitable.

## COUNT II

### (FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

77. Nova incorporates the allegations contained in paragraphs 1 through 76 as though set forth herein.

78. Defendant's unlawful conduct has caused or threatens to cause Nova with irreparable harm, for which there is no adequate remedy at law.

79. The injunctive relief sought will not adversely affect the public interest, but rather will substantially promote the public interest as it will protect intellectual property rights and promote public safety.

80. Nova will likely prevail on the merits of its claims for copyright infringement, and the balance of harms weighs substantially in favor of ordering injunctive relief.

WHEREFORE Nova respectfully requests that the Court enter orders of preliminary and permanent injunction pursuant to which Grace and Capital, and their respective corporate parents, subsidiaries and affiliates, and their officers, directors, members, managers, employees and agents, as well as their successors and assigns: (1) are enjoined from any further use of any design or drawing that infringes on Nova's copyright; and (2) directed to immediately return, surrender and/or destroy any and all such infringing designs and drawings; and granting such additional relief and remedy relief as this Court may deemed just and appropriate.

## COUNT III

### (BREACH OF CONTRACT)

81. Nova incorporates the allegations contained in paragraphs 1 through 80 as though set forth herein.

82. As set forth herein, Nova performed its obligations under the Agreement.

83. Nova received no consideration for foregoing payments from Grace that were otherwise due to Nova.

84. Grace breached the Agreement in the manner described herein.

85. As a direct and proximate result of Grace's breach, Nova has been damaged, both with respect to lost profits and injury to its reputation and good will.

WHEREFORE, Nova respectfully requests the entry of an order of judgment in its favor and against Grace for the full extent of the damages in an amount to be proven at trial, an award of attorneys fees and interest as provided in the Agreement, plus such other relief as this Court may deemed just and appropriate.

## COUNT IV

### (BREACH OF CONTRACT)

86. Nova and Annex incorporates the allegations contained in paragraphs 1 through 85 as though set forth herein.

87. Grace breached the Agreement, including the covenant of good faith and fair dealing implied therein, depriving Annex of its reasonable expectation as a third-party beneficiary to the Agreement, and depriving Nova of its reasonable expectation of recouping profits through the award of the construction contract to its affiliate.

88. As a direct and proximate result of Grace's breach, Nova and Annex have been damaged.

WHEREFORE, Nova and Annex respectfully request the entry of an order of judgment in their favor and against Grace for the full extent of the damages in an amount to be proven at trial, an award of attorneys fees and interest as provided in the Agreement, plus such other relief as this Court may deemed just and appropriate.

## COUNT V

### (MISAPPORIATION)

89. Nova incorporates the allegations contained in paragraphs 1 through 88 as though set forth herein.

90. As set forth herein, Nova committed substantial efforts and resources to the design and drawings that it submitted to Grace.

91. Grace, Walz, Lyons Design and Capital used the designs and drawings to compete with Nova, without undertaking the burdens described herein, and thereby gaining a special advantage at Nova's expense. Nova received no consideration for foregoing payments from Grace that were otherwise due to Nova.

92. The referenced conduct caused commercial damage to Nova.

WHEREFORE, Nova respectfully requests the entry of an order of judgment in its favor and against Grace for the full extent of the damages in an amount to be proven at trial, an award of attorneys fees and interest as provided in the Agreement, plus such other relief as this Court may deemed just and appropriate.

## COUNT VI

### (ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT)

93. Nova incorporates the allegations contained in paragraphs 1 through 92 as though set forth herein.

94. As set forth herein, Grace, Lyons Design and Walz passed-off Nova's copyrighted designs and drawings as their own and/or as properly licensed copies or modifications of Nova's designs and drawings.

95. There was a likelihood of confusion on the part of the City as to the origin of and authority to use Nova's designs and drawings.

96. As a direct and proximate result of Grace's breach, Nova has been damaged, both with respect to lost profits and injury to its reputation and good will.

WHEREFORE, Nova respectfully requests the entry of an order of judgment in its favor and against Grace, Lyons Design and Walz for the full extent of the damages in an amount to be proven at trial, plus attorneys fees and such other relief as this Court may deemed just and appropriate.

## COUNT VII

### (TORTIOUS INTERFERENCE)

97. Nova and Annex incorporates the allegations contained in paragraphs 1 through 96 as though set forth herein.

98. Nova had a reasonable expectation that it would receive professional fees relating to the redesign of the project and/or modification of its copyrighted drawings, as well as architectural consulting fees during construction.

99. Annex had a reasonable expectation that it would be awarded the contract for the construction of the hotel.

100. Through their conduct detailed above, Capital, Schmitz, Walz, Lyons and Lyons Design wrongfully and tortiously induced Grace to breach the Agreement, and wrongfully and tortiously interfered with the Nova's and Annex's respective prospective economic advantages.

101. Capital, Schmitz, Walz, Lyons and Lyons Design acted willfully, warranting the sanction of punitive damages to prevent similar conduct in the future.

102. As a direct and proximate result of the referenced Defendants' conduct, Nova and Annex have been damaged.

WHEREFORE, Nova and Annex respectfully request the entry of an order of judgment in their favor and against Capital, Schmitz, Walz, Lyons and Lyons Design, jointly and severally, for the full extent of the damages in an amount to be proven at trial, plus an award of punitive damages in an amount at least equal thereto, the award of attorneys fees and such other relief as this Court may deemed just and appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

NOVA DESIGN BUILD, INC.

By: /s/ George J. Spathis
One of its Attorneys

George J. Spathis (No. 6204509)
S. Jared Raab (admission pending)
Rebecca Hanson (No. 6280296)
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark, Suite 800
Chicago, Illinois 60610
(312) 541-0151